UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

| | | |
|---|---|---|
| SOUTHERN OHIO SAND, LLC, | : | |
| Plaintiff, | : | CASE NO. 16-CV-833 |
| vs. | : | |
| PREFERRED PROPPANTS, LLC, | : | OPINION & ORDER [Resolving Doc. 2] |
| Defendant. | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Southern Ohio Sand, LLC ("SOS") sues Defendant Preferred Proppants, LLC ("Preferred"). SOS alleges Preferred breached a November 4, 2015 Mutual Non-Disclosure and Confidentiality Agreement ("the Agreement").[1] Plaintiff SOS and Defendant Preferred both mine and sell sand and other aggregates.

At the time it filed its complaint, and without hearing or notice, Plaintiff sought, and the Lake County Common Pleas Court issued, a temporary restraining order. The TRO stopped defendant "from contacting [] plaintiff's customers and competitors."[2] The restraining order apparently aims to stop Preferred from negotiating to purchase an SOS customer.

After Defendant Preferred removed the case to this Court, Defendant filed a motion under Federal Civil Rule 65(b)(4) to dissolve the temporary restraining order.[3]

For the following reasons, this Court **GRANTS** Defendant's motion to dissolve Plaintiff's temporary restraining order.

---

[1] Doc. 1-1.
[2] *Southern Ohio Sand LLC v. Preferred Proppants LLC JPO*, Case No. 16CV000611 (Lake County Common Pleas Court (Docket entry dated April 5, 2016).
[3] Doc. 2.

Case No. 16-cv-833
Gwin, J.

## I. Background

Plaintiff SOS mines and cleans sand for use in fracking and other applications. Defendant Preferred operates sand mines in other states, but none so far in Ohio. In 2015, the parties entered into preliminary negotiations for Defendant to purchase Plaintiff.[4] As part of Defendant's due diligence, Plaintiff SOS provided Defendant Preferred with allegedly proprietary and confidential information.[5] The parties also signed the Agreement, that arguably forbids Defendant from using Plaintiff's proprietary information or disclosing it to others.[6] The Agreement does not appear to have a non-compete provision.

Negotiations between the parties broke down and Defendant Preferred never bought Plaintiff SOS. Plaintiff alleges that after negotiations ended, Defendant used Plaintiff's proprietary information in talks with some of Plaintiff's customers. Plaintiff also alleges that Defendant is negotiating to buy one of Plaintiff's customers and convert that company into a competitor.[7]

On April 5, 2016, Plaintiff filed its complaint in the Lake County Court of Common Pleas.[8] Plaintiff alleges ten counts of Ohio law violations arising from the parties' failed deal and Defendant's alleged use of Plaintiff's proprietary information.

On April 5, 2016, Plaintiff also sought and received an ex parte temporary restraining order prohibiting Defendant from using the proprietary information, communicating with Plaintiff's customers, or competing in Ohio.[9] Plaintiff did not provide notice to Defendant until after it received the temporary restraining order.[10] Plaintiff did not post a bond.

---

[4] Doc. 1-1 at 5.
[5] *Id.* at 4–5.
[6] *Id.* at 4, 6.
[7] *Id.* at 10.
[8] Doc. 1-1.
[9] Doc. 2-4.
[10] Doc. 9 at 3.

Case No. 16-cv-833
Gwin, J.

On April 7, 2016, Defendant removed the case to this Court on diversity grounds.[11]

On April 7, 2016, Defendant also moved to dissolve the state court-issued temporary restraining order.[12] On April 8, 2016, Plaintiff opposed the motion.[13] On April 11, 2016, Defendant filed its reply in support of dissolving Plaintiff's temporary restraining order.[14]

## II. Legal Standard

All injunctions, including temporary restraining orders, issued by a state court "prior to . . . removal . . . remain in full force and effect until dissolved or modified by the district court."[15] However, once an action is removed from state court, "federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal."[16] Furthermore, when evaluating a motion to dissolve a temporary restraining order issued by a state court before removal, "federal law is applied as though the action was originally commenced [in federal court]."[17] This Court has the authority to dissolve the temporary restraining order issued by the state court before removal.

Under Federal Rule of Civil Procedure 65(b)(4), the party against whom a temporary restraining order has issued may move to dissolve or modify the order, and the court must then promptly hear and decide the motion. In seeking continued injunctive relief, Plaintiff SOS has the burden of showing a right to the relief.[18] The motion to dissolve should be granted where the temporary restraining order was improperly issued.

---

[11] Doc. 1 at 1–3.
[12] Doc. 2.
[13] Doc. 9.
[14] Doc. 11.
[15] 28 U.S.C. § 1450.
[16] *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974).
[17] *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F.Supp.2d 124, 127 (E.D.N.Y. 2004) (citing Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3738).
[18] *Stenberg v. Cheker Oil Co.,* 573 F.2d 921, 925 (6th Cir.1978).

Case No. 16-cv-833
Gwin, J.

Under Rule 65(b)(1), a temporary restraining order issued without notice to the adverse party is only proper where:

  (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

  (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Federal courts use the same general standard for both temporary restraining orders and preliminary injunctions.[19] To grant either form of injunctive relief, a court must consider: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent a stay[20]; (3) whether granting the stay would cause substantial harm to others; and (4) whether the public interest would be served by granting the stay."[21] No one factor controls; instead courts balance all four factors.[22]

 "Injunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case."[23] This is because:

> There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages. The right must be clear, the injury impending or threatened, so as to be averted only by the protecting preventive process of injunction; but that will not be awarded in doubtful cases.[24]

---

[19] *Northeast Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell,* 467 F.3d 999, 1009 (6th Cir. 2006).
[20] *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) ("[A] plaintiff's harm is not irreparable if it is fully compensable by money damages."); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2942 (3d ed.) ("[T]he main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy.").
[21] *Id.; see also Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004).
[22] *In re De Lorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985) ( "[T]he four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.").
[23] *Plain Dealer Pub. Co. v. Cleveland Typographical Union No. 53*, 520 F.2d 1220, 1230 (6th Cir. 1975).
[24] Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2942 (3d ed.) (quoting *Bonaparte v. Camden*, C.C.D.N.J.1830, 3 Fed.Cas. 821, 827 (No. 1,617)).

Case No. 16-cv-833
Gwin, J.

### III. Discussion

This Court finds that Plaintiff SOS' motion for an ex parte restraining order does not satisfy Federal Civil Rule 65. Furthermore, Plaintiff does not sufficiently show it has a strong likelihood of success on the merits and does not sufficiently show that Plaintiff would suffer irreparable injury unless a restraining order is given.

**Federal Rule of Civil Procedure 65(b)(1)(A)**

In petitioning for the ex parte temporary restraining order, Rule 65(b)

requires that in order to obtain an ex parte restraining order the applicant must show that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition . . . ." A demonstration of irreparable injury by the party seeking relief is an essential prerequisite to a temporary restraining order.[25]

In seeking the temporary restraining order, Plaintiff SOS gave only conclusory description for the need for an ex parte temporary restraining order and gives only conclusory description of any protectable interest that could support injunctive relief.

Plaintiff's verified complaint alleges that Plaintiff SOS owns an approximately 500-acre sand mining, washing, and drying operation in Pike County, Ohio. SOS alleges that the Southern Ohio Sharon Conglomerate sand vein runs through its 500-acre property.

Plaintiff SOS then claims that it had entered into negotiations to sell its business to the much larger Defendant Preferred and gave Preferred access to confidential due diligence information. However, Plaintiff and Defendant failed to reach agreement on the sale.

After failing to reach agreement to close a purchase of Plaintiff SOS, Plaintiff alleges that Defendant Preferred began negotiating to buy Ohio Basic Minerals. Ohio Basic Minerals mines

---

[25] Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.).

Case No. 16-cv-833
Gwin, J.

sand at a Southern Ohio location and also makes some sand purchases from Plaintiff SOS. Plaintiff nowhere alleges that Ohio Basic Materials is a major SOS customer or is a major SOS competitor. The verified complaint instead says "OBM [Ohio Basic Materials] was a customer of SOS, it also competed with SOS as to some revenue sources."[26]

Regarding its obligation to show threatened irreparable injury sufficient to justify injunction, Plaintiff SOS says it disclosed information on its experience on its 500-acre parcel with the Southern Ohio Sharon sand vein and disclosed pricing and production cost information on its sand sales to Ohio Basic Materials. Repeating, Plaintiff nowhere alleges that its sales to Ohio Basic Materials was a significant portion of its overall sales.

Plaintiff does not show from "specific facts in an affidavit or a verified complaint,"[27] that closing a purchase of one of Plaintiff's customers, even where that customer sometimes competes with Plaintiff for sand sales, would threaten irreparable injury.

Plaintiff's claims on this issue are too speculative to satisfy Federal Civil Rule 65(b). Plaintiff admits that:

> Plaintiff does not know how close [Defendant Preferred and Ohio Basic Minerals] are [to reaching an agreement]. They could be circulating documents and those documents could be swiftly signed if notice was given. Indeed, although it is speculative, there is some concern that Defendant wants to have the TRO dissolved so it can quickly close a deal with OBM.[28]

Plaintiff makes no showing from these assertions that Defendant would or could close a deal with one of Plaintiff's customers. More important, Plaintiff gives no specific evidence how any closing would impair a significant protectable interest.

---

[26] Doc. 1-1 at 10.
[27] Fed. R. Civ. P. 65(b)(1)(A).
[28] Doc. 9 at 5.

Case No. 16-cv-833
Gwin, J.

Plaintiff makes vague claims that Plaintiff and its customer Ohio Basic Minerals both mine a Sharon Conglomerate sand vein running through Southern Ohio. But Plaintiff's argument that a different mining company mines the same large sand vein running through large areas of Southern Ohio undercuts its generalized argument that it had some kind of protectable interest in information about the sand vein.

Plaintiff SOS's motion for a temporary restraining order does not satisfy Federal Civil Rule 65's requirement of a specific showing "that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or his attorney can be heard in opposition." Therefore, a temporary restraining order should not have issued in this case without prior notice to Defendant.

**No Strong Showing of Success on the Merits**

Alternatively, Plaintiff does not satisfy the four-factor test for issuing a temporary restraining order or preliminary injunction.[29]

Plaintiff does not show a strong likelihood of success on the merits of its claims at this point. Plaintiff does not articulate what specific proprietary information Defendant impermissibly used, how Defendant used it, or how the use harmed Defendant. Plaintiff does not show that the categories of information Plaintiff says Defendant used—the existence of the Southern Ohio Sharon Conglomerate sand vein, the existence of Ohio Basic Minerals, and sales history between Plaintiff and Ohio Basic Minerals—are protected confidential information. The existence of the sand vein and of Ohio Basic Minerals seems to be readily knowable. Defendant can learn of the sales history between Plaintiff and Ohio Basic Minerals from speaking with

---

[29] See *Rock and Roll Hall of Fame and Museum, Inc.*, 134 F.3d at 753.

Case No. 16-cv-833
Gwin, J.

Ohio Basic Minerals. This factor does not weigh in favor of continuing the temporary restraining order.

**No Irreparable Injury**

In addition, the Plaintiff's alleged harms are fully compensable by monetary damages and are reparable. Any damages Plaintiff would have in this case arise from the parties' Agreement and from Defendant's alleged use of Plaintiff's proprietary information. Plaintiff makes no showing why any alleged violations could not be compensated in damages. Rather, it seems that any harm in the form of lost profits from any improper use of protected information lends itself to compensatory damages.[30] This factor weighs in favor of dissolving the temporary restraining order.

**Harm to Ohio Basic Minerals**

The pleadings indicate some harm to third parties from the temporary restraining order. The order deprives Ohio Basic Minerals of the opportunity to do business with Defendant, even though the parties are in negotiations with one another. The same would be true for other Ohio industrial sand companies looking to do business with Defendant. This factor weighs somewhat in favor of dissolving the temporary restraining order.

**Injunctive Relief Goes Against Public Policy**

Continuing the temporary restraining order would go against public policy. The parties' Agreement does not have a non-competition provision. Yet, the temporary restraining order prevents Defendant from "competing against Plaintiff in Ohio."[31] Such a broad ban on

---

[30] *Ohio Contractors Ass'n v. City of Akron*, No. 5:14CV0923, 2014 WL 1761611, at *8 (N.D. Ohio May 1, 2014) (harms like "loss of work, increased costs, reduced productivity and profit" are "purely economic" and therefore "compensable by money damages").
[31] Doc. 2-4 at 2.

-8-

Case No. 16-cv-833
Gwin, J.

competition goes against public policy encouraging competitive markets.[32] This factor weighs in favor of dissolving the temporary restraining order.

The four injunctive relief factors do not weigh in favor of continuing Plaintiff's temporary restraining order against Defendant.

### IV. Conclusion

For the reasons above, this Court **GRANTS** Defendant's motion to dissolve Plaintiff's temporary restraining order.

IT IS SO ORDERED.

Dated:  April 14, 2016                                            *s/         James S. Gwin*
                                                                                    JAMES S. GWIN
                                                                                    UNITED STATES DISTRICT JUDGE

---

[32] See *Ohio Contractors Ass'n v. City of Akron*, 2014 WL 1761611, at *10.